IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

ANGELA SCHUNCEY RICHARSON,          *
ADC #712575,                        *
                                    *
              Plaintiff,            *
v.                                  *          No. 1:18cv00008-JJV
                                    *
WENDY KELLEY, Director,             *
Arkansas Department of Correction; *et al.*, *
                                    *
              Defendants.           *

## MEMORANDUM AND ORDER

## I.    INTRODUCTION

Angela Schuncey Richardson ("Plaintiff") is a prisoner in the McPherson Unit of the

Arkansas Department of Correction ("ADC").  She has filed a *pro se* Complaint under 42 U.S.C.

§ 1983 alleging that, from March 2016 to November 2017, Defendants ADC Assistant Director

Dexter Payne, Warden Darryl Golden, Assistant Warden Tami Jo Aiken, Assistant Warden John

Herrington, Program Coordinator Clara Robinson, and Recreational Coordinator Virginia Spence

violated her constitutional rights by retaliating against her in numerous ways.  (Doc. No. 2.)  She

also contends ADC Director Wendy Kelley failed to take corrective action.[1]  (*Id.*)  Plaintiff, who

has named Defendants in both their individual and official capacities, seeks monetary damages

and injunctive relief.  (*Id.*)

Defendants have filed a Motion for Summary Judgment, contending they are entitled to

judgment as a matter of law on Plaintiff's retaliation claims.  (Doc. Nos. 45-47.)  Plaintiff has filed

a Response. (Doc. Nos. 50-52.)   Thus, this matter is now ripe for a decision.  After careful review,

---

[1] I have previously dismissed without prejudice all other claims raised in the Complaint.  (Doc.
No. 27.)

and for the following reasons, I find summary judgment is appropriate.  Accordingly, Defendants'

Motion for Summary Judgment is GRANTED, and Plaintiff's Complaint is DISMISSED.

## II.      SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or

is genuinely disputed must support the assertion by citing to particular parts of materials in the

record, "including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials[.]"  Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a

light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th

Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the

existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825

(8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative

evidence that would permit a finding in her favor on more than mere speculation, conjecture, or

fantasy.  *Id.*  (citations omitted).  A dispute is genuine if the evidence is such that it could cause a

reasonable jury to return a verdict for either party; a fact is material if its resolution affects the

outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).

Disputes that are not genuine or that are about facts that are not material will not preclude summary

judgment.  *Sitzes v. City of W. Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.     FACTS

The facts, viewed in the light most favorable to Plaintiff, are as follows. On October 29,

2015, Plaintiff was investigated by non-party ADC officials for possibly engaging in sexual misconduct with inmate Ronita Bell at the McPherson Unit. (Doc. No. 47-3.) In December 2015, the investigation concluded that "the charges were unsubstantiated, however not unfounded." (Doc. Nos. 47-3; 47-27.) It is unclear whether a separation order precluding contact between Plaintiff and Ms. Bell was entered at that time. (Doc. Nos. 47-26; 47-27.)

On December 10, 2015, Plaintiff was transferred to the Hawkins Unit. (Doc. No. 47-2.) Soon after her arrival, Plaintiff asked to be moved because she was afraid of dogs that were in her barrack as part of a prison training program. (Doc. Nos. 47-5; 47-6; 47-11.) Assistant Warden Aiken granted Plaintiff's request and recommended she discuss her dog phobia with the mental health department. (*Id.*) In January or February of 2016, Plaintiff told a non-party lieutenant that she had been sexually assaulted by a nurse working in the infirmary. (Doc. No. 2 at 6); *see also Richardson v. Kelley*, 1:16-cv-00154-KGB-JTK (Doc. No. 8). The lieutenant reported that information to Defendant Aiken, who instructed the lieutenant to start an internal investigation.[2] (*Id.*) Defendant Aiken did not have any further involvement in the investigation, which was overseen by the Hawkins Unit Warden, and she began working at the McPherson Unit shortly thereafter. (*Id.*; Doc. No. 47-1.)

On March 17, 2016, Plaintiff was transferred to the McPherson Unit because she was a "discipline problem" at the Hawkins Unit. (Doc. Nos. 47-2; 47-7; 47-8.) Plaintiff was assigned to barrack 14, while Ms. Bell was in barrack 4. (Doc. No. 2 at 7-8.) Plaintiff immediately asked

---

[2] The internal investigation ultimately concluded Plaintiff's sexual assault claims against the nurse were "unfounded." *Richardson v. Kelley*, 1:16-cv-00154-KGB-JTK (Doc. No. 8 at 5). On November 3, 2016, Plaintiff filed a *pro se* § 1983 action raising her sexual assault claim, and that case is still pending. (*Id.*)

3

non-party correctional officers if she could be moved out of barrack 14 because she did not want to live with a paralyzed inmate whose serious health condition required her to wear adult diapers that were offensive to Plaintiff. (*Id.*) Plaintiff's request was denied, but she continued to seek reassignment. (*Id.*) On March 22, 2016, Plaintiff and Ms. Bell ate lunch together in the chow hall. (*Id.* at 8.) Sometime later that day, Assistant Warden Aiken and Warden Golden entered a Separation Order prohibiting contact between Plaintiff and Ms. Bell for security reasons. (Doc. No. 47-12.) During the following months, Plaintiff made numerous oral and written challenges to what she believed was a "bogus" Separation Order. (Doc. Nos. 2 at 7-28, 59, 88, 89, 187, 194; 47-13.) Defendants denied those requests for security reasons. (*Id.;* Doc. Nos. 47-17; 47-20.)

The Separation Order was inconvenient for Plaintiff in several ways. Specifically, Plaintiff contends that: (1) in April 2016 and October 2017, Defendants Golden, Herrington, and Robinson would not allow her to be in the prison library with Ms. Bell; (2) in July 2016 and January 2017, Plaintiff received two disciplinary charges - of which she was later found not guilty - for being out of her assigned place and having contact with Ms. Bell; (3) in August 2016, Defendant Spence removed Plaintiff from a board game group because Ms. Bell was present; (4) in December 2016, Defendants Aiken and Golden would not let Plaintiff join the church choir, the inmate counsel, and other unspecified "privileged events" because Ms. Bell was present; and (5) in November 2017, Defendants Herrington, Bell, and Payne would not let Plaintiff participate in a dance class led by Ms. Bell. (Doc. Nos. 2; 47-21; 47-22; 47-28.) Plaintiff also claims that, in March 2017, Defendant Robinson failed to provide her with legal supplies. (No. 2 at 24-25.) Plaintiff believes all of these actions were taken for retaliatory reasons.[3]

---

[3] In a separate lawsuit, Plaintiff alleges that many of these actions were taken in violation of her equal protection rights. *Richardson v. Kelley,* 1:18-cv-00032-DPM-PSH (Doc. No. 2).

IV.    **ANALYSIS**

A.    **Sovereign Immunity**

Defendants argue they are entitled to sovereign immunity.  They are correct.  The doctrine of sovereign immunity, which is derived from the Eleventh Amendment, prevents a plaintiff from recovering monetary damages from a state official sued in his or her official capacity, unless the state has waived its immunity.  *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); *Larson v. Kempker*, 414 F.3d 936, 939-40 (8th Cir. 2005).   The State of Arkansas has not waived its immunity.  *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991).   Thus, Plaintiff's request for monetary damages against Defendants in their official capacities is dismissed with prejudice.

B.    **Qualified Immunity**

Defendants argue they are entitled to qualified immunity from the retaliation claims raised against them in their individual capacities.  Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a question of fact.  *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005).  Thus, issues concerning qualified immunity are appropriately resolved on summary judgment.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

Defendants are entitled to qualified immunity if: (1) the facts, viewed in the light most favorable to Plaintiff, do not establish a violation of her constitutional rights; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a

reasonable official would not have known that his or her actions were unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 555 U.S. at 232; *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). For the following reasons, I conclude Defendants are entitled to qualified immunity because the facts, viewed in the light most favorable to Plaintiff, do not establish a violation of her constitutional right to be free from retaliation.

The First Amendment prohibits prison officials from retaliating against inmates for exercising their constitutional rights. *Saylor v. Nebraska,* 812 F.3d 637, 645 (8th Cir. 2016); *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013). To defeat qualified immunity and proceed to trial on her retaliation claims, Plaintiff must have evidence that: (1) she engaged in a constitutionally protected activity; (2) Defendants took adverse action against her that would chill a prisoner of ordinary firmness from continuing with that constitutionally protected activity; and (3) retaliation was the motivating factor for the adverse action. *See Id.*

Although it is difficult to decipher, it appears Plaintiff is alleging Defendants retaliated against her for filing approximately 200 grievances from 2015 to 2017, and for claiming she was sexually assaulted by a nurse at the Hawkins Unit. (Doc. Nos. 2; 47-9.) Clearly, both of these actions are constitutionally protected activities. *Santiago,* 707 F.3d at 991; *Spencer v. Jackson Cty. Mo.,* 738 F.3d 907, 911 (8th Cir. 2013); *Haynes v. Stephenson*, 588 F.3d 1152, 1155–56 (8th Cir. 2009).

As to the second element, the "ordinary-firmness test" is "designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First

Amendment." *Santiago*, 707 F.3d at 992; *Garcia v. City of Trenton*, 348 F.3d 726, 728-29 (8th Cir. 2003). Defendants argue any adverse action Plaintiff may have endured does not satisfy this test because she has been undeterred from filing numerous grievances and lawsuits. However, "the ordinary-firmness test is an objective one, not subjective," and it "is usually best left to the judgment of a jury." *Id.* Thus, I will presume, for the purpose of resolving the pending motion, that Plaintiff has cleared this hurdle. *See Spencer*, 738 F.3d at 911 (explaining that the denial of prison privileges may be sufficient adverse action to support a retaliation claim).

Finally, Plaintiff must have evidence that retaliation was "the actual motivating factor" and that the adverse consequence would not have occurred "but for an unconstitutional, retaliatory motive." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012); *see also Haynes*, 588 F.3d at 1157. In other words, "the reason for the government official's action must have been to prevent" Plaintiff from filing grievances or raising a sexual assault claim. *See Saylor,* 812 F.3d at 646. To satisfy this requirement, Plaintiff must have "affirmative evidence of a retaliatory motive" and mere speculation or conclusory allegations are insufficient. *Lewis v. Jacks,* 486 F.3d 1025, 1029 (8th Cir. 2017); *Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999). Plaintiff has not met her burden. *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (explaining a prisoner "carries a substantial burden to prove retaliation was the actual motivating factor" for the adverse action).

1.    Transfers

Prisoners do not have a constitutional right to be housed in a particular unit. *Saylor,* 812 F.3d at 646; *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993). "In fact, prison officials may transfer a prisoner for whatever reason or for no reason at all," so long as retaliation is not the motivating factor for the move. *Saylor*, 812 F.3d at 646.

7

In the Complaint, Plaintiff makes the conclusory allegation that her March 2016 transfer to the McPherson Unit was made in retaliation for her filing numerous grievances and claiming she was sexually assaulted at the Hawkins Unit. (Doc. No. 2.) But, there is no evidence any of the Defendants named in this lawsuit were personally involved in that transfer decision. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (because there is no vicarious liability in § 1983 actions, a prisoner must establish that "each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Further, Plaintiff has not identified any affirmative evidence demonstrating the transfer was motivated by retaliation for her filing grievances or claiming she was sexually assaulted. It is undisputed Plaintiff knew Defendant Aiken at the Hawkins Unit before her March 2016 transfer, but it appears their encounters were favorable with Defendant Aiken granting Plaintiff's request to be removed from a barrack containing dogs and instructing a lieutenant to start an investigation of Plaintiff's sexual assault allegations. Also, an ADC grievance officer declares, in her sworn affidavit, that Plaintiff did not file any grievances against Defendant Aiken prior to her March 2016 transfer to the McPherson Unit. (Doc. No. 47-10.) Plaintiff has not pointed to any evidence to refute that assertion or otherwise support her mere speculation that she was transferred in retaliation for filing grievances or claiming she was sexually assaulted. *See Lewis,* 486 F.3d at 1029 (speculation and conclusory allegations are insufficient to support a retaliation claim); *Oakdale Mall Assocs. v. Cincinnati Ins. Co*., 702 F.3d 1119, 1124 (8th Cir. 2013) (it is not the trial court's "responsibility to sift through the record to see if, perhaps, there was an issue of fact" precluding summary judgment).

In her Response to the Motion for Summary Judgment, Plaintiff alleges, *for the first time,* that her December 2015 transfer to the Hawkins Unit was in retaliation for her writing two "self-published novels" about her life in prison, talking to representatives from the Department of

8

Justice, and seeking permission to speak on camera to a reporter.  (Doc. Nos. 50 at 1-2.)   Plaintiff

has not obtained permission to file an Amended Complaint adding this new claim, and she cannot

do so in her summary judgment papers. More importantly, as previously mentioned, there is no

evidence any of the Defendants named in this lawsuit were personally involved in the December

2015 transfer decision.  Accordingly, I conclude Defendants are entitled to qualified immunity on

Plaintiff's retaliatory transfer claims.  *See Spencer,* 738 F.3d at 912 (8th Cir. 2013) (to defeat

summary judgment, a prisoner must have evidence "he would not have been transferred but for an

unconstitutional, retaliatory motive").

2.    Separation Order and Discretionary Programs

Plaintiff does not have a constitutional right to have contact with Ms. Bell or participate in

discretionary prison programs.  *See Persechini v. Callaway*, 651 F.3d 802, 807 (8th Cir. 2011);

*Wishon v. Gammon*, 978 F.3d 446, 450 (8th Cir. 1992).  However, Defendants cannot restrict her

participation for retaliatory reasons.  *See Spencer,* 738 F.3d at 911 (explaining the "retaliatory

conduct itself need not be a constitutional violation; the violation is acting in retaliation for the

exercise of a constitutionally protected right").

Plaintiff believes the March 22, 2016 Separation Order was entered by Defendants Aiken

and Golden, and enforced by the remaining Defendants, for retaliatory reasons.  However, she has

not offered any evidence to support her speculative and conclusory allegation.  To the contrary,

the record suggests the Separation Order was entered based on a prior investigation conducted by

non-parties and ongoing, legitimate security concerns.  *See Whitley v. Albers,* 475 U.S. 312, 321

(1986) ("a prison's internal security is peculiarly a matter normally left to the discretion of prison

administrators"); *Williams v. Hobbs*, 662 F.3d 994, 1006 (8th Cir. 2011) (same).  Importantly, even

after the March 22, 2016 Separation Order was entered, Plaintiff's relationship with Ms. Bell

9

continued to raise security problems for prison officials at the McPherson Unit.[4]  It is Plaintiff's burden to prove "retaliation was the actual motivating factor" and that the Separation Order (and the resulting limitations on her ability to participate in discretionary programs) would not have occurred "but for a retaliatory motive." *Beaulieu,* 690 F.3d at 1025; *Haynes,* 588 F.3d at 1157. Because she has not done so, I conclude Defendants are entitled to qualified immunity on this retaliation claim.

### 3.    Disciplinary Charges

On July 21, 2016, Sergeant Ayers, who is no longer a party in this lawsuit, filed a major disciplinary charge accusing Plaintiff, Ms. Bell, and several other inmates of forging documents so that they could improperly be in the library together.  (Doc. No. 47-21.)  On January 9, 2017, a non-party filed a major disciplinary charge accusing Plaintiff and Ms. Bell of eating lunch together in violation of the Separation Order.  (Doc. No. 47-28.)  Non-party hearing officers found Plaintiff *not guilty* of both charges.  (*Id*.)  But, that does not bar Plaintiff's retaliation claim because the Eighth Circuit has held that the "*filing* of a disciplinary charge," even if it does not result in a conviction or is later reversed during the appeal process, is actionable if the charge was issued for retaliatory reasons.  *Haynes*, 588 F.3d at 1156 (emphasis in the original); *see also Farver v. Schwartz,* 255 F.3d 473, 475 (8th Cir. 2001).  To defeat qualified immunity, Plaintiff must have evidence these disciplinary charges were filed in retaliation for her filing grievances or raising her sexual assault claim.   In other words, she must "show that but for a retaliatory motive the prison official would not have filed the disciplinary report." *Haynes*, 588 F.3d at 1156.  Plaintiff has not

---

[4]  In May and December of 2017, Plaintiff had heated arguments with other prisoners about Ms. Bell.  (Doc. Nos. 47-30, 47-31, 47-35.)

done so.  Thus, Defendants are entitled to qualified immunity on her retaliatory discipline claims.[5]

        4.      Legal Supplies

Finally, Plaintiff alleges that, in March 2017, Defendant Robinson failed to notify the unit business manager, in writing, that Plaintiff needed to purchase legal supplies to meet an unspecified deadline.  (Doc. Nos. 2 at 24-25; 47-29.)  Plaintiff declares, without any supporting facts or evidence, that Defendant Robinson did so "out of retaliatory motives."  (Doc. No. 2 at 24.) As previously explained, to proceed to trial, Plaintiff must present "affirmative evidence of a retaliatory motive" and mere speculation or conclusory allegations are insufficient.  *Lewis*, 486 F.3d at 1029; *Cooper*, 189 F.3d at 784.  Because Plaintiff has failed to come forward with any such evidence, I conclude Defendant Robinson is entitled to qualified immunity on this retaliation claim.

### C.      Injunctive Relief

The doctrines of sovereign immunity and qualified immunity do not apply to Plaintiff's request for prospective injunctive relief.  *See Mead v. Palmer,* 794 F.3d 932, 937 (8th Cir. 2015); *Monroe v. Ark. State Univ.,* 495 F.3d 591, 594 (8th Cir. 2007).  For the reasons previously explained, I conclude Plaintiff does not have sufficient evidence to proceed to trial on her retaliation claims.  Accordingly, her request for prospective injunctive relief is also dismissed with prejudice.

---

[5] In her summary judgment papers, Plaintiff alleges several disciplinary *convictions* were retaliatory.  (Doc. Nos. 50-52.)  As previously stated, Plaintiff cannot raise new claims at summary judgment.  Further, it is well settled that a disciplinary conviction rendered by an impartial decision maker and supported by some evidence "checkmates" a retaliation claim.  *Santiago*, 707 F.3d at 933; *Sanders v. Hobbs*, 773 F.3d 186, 190 (8th Cir. 2014).  Plaintiff has not named any of the disciplinary hearing officers as Defendants or alleged they had a motive to retaliate against her. Thus, her retaliation claims regarding her disciplinary convictions fail as a matter of law.

**V.    CONCLUSION**

IT IS, THEREFORE, ORDERED that:

1.    Defendants' Motion for Summary Judgment (Doc. No. 45) is GRANTED.

2.    Plaintiff's retaliation claims against Defendants Kelley, Payne, Golden, Aiken, Robinson, Spence, and Herrington are DISMISSED with prejudice.

3.    Pursuant to 28 U.S.C. § 1915(a)(3), an *in forma pauperis* appeal from this Order or the accompanying Judgment would not be taken in good faith.

DATED this 20th day of February 2019.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE